# WEBB *v.* KING.

EQUITY; LACHES; EQUITY PLEADING AND PRACTICE; TEMPORARY RE-
STRAINING ORDER; LESSOR AND LESSEE; FORFEITURE OF LEASE;
MULTIFARIOUSNESS.

1. Where the original lessor in a lease providing for the payment of
taxes by the lessee, died, and his widow, who, with the consent
of the lessor, succeeded to her husband's interest, failed to pay
the taxes for the second half of the year following his death,
through inadvertence and in consequence of mental distress upon
the death of her husband, but thereafter paid all subsequently
accruing taxes, and the property was sold at a tax sale, and
she failed to consummate negotiations with the purchaser to buy
his tax certificate because of a difference of opinion as to the
price to be paid and also because she was advised that the tax
sale was invalid, it was *held* on a motion to dissolve a temporary
restraining order on a bill by the widow against the lessee to be
relieved from an attempted forfeiture of the lease and to enjoin
proceedings to regain possession of the property, that there was
no such delay or laches on the complainant's part as would
preclude her from relief in equity.

2. A motion for an injunction *pendente lite* made after the filing of
an answer, is not to be determined as though the hearing were
upon bill and answer. While the statements of the answer re-
sponsive to the bill should be given due weight, it does not fol-
low that the answer, which on the hearing of the motion cannot
be regarded as much more than an affidavit, should be allowed
to overcome the sworn statements of the bill. The sworn state-
ments of the answer are entitled to no greater weight than the
sworn statements of the bill, and it is within the sound discretion
of the court to grant or withhold the injunction.

3. Where the payment of taxes by the lessee is made a part of the
rental consideration of a lease, equity will relieve from forfeiture
for the nonpayment of taxes equally with forfeiture for the
nonpayment of rent as such. Under such circumstances, the
lessor does not escape the duty of vigilance to see that the taxes
are paid within the two years allowed for redemption of property
from sale for nonpayment of taxes.

4. The fact that a lessee charged with the payment of taxes has allowed the leased property to be sold for taxes and a tax deed to be issued to one other than the lessor, will not of itself prevent his being relieved of the forfeiture of his lease in a suit in equity against the lessor and the holder of the tax deed for such relief, to enjoin proceedings by the lessor to recover possession, and to declare the tax deed void, for if the deed is valid, the lessor has no right to re-enter, while if invalid, it should interpose no objection to a redemption of the property either by the lessor or lessee, the situation in law being as if no tax deed had been issued.

5. If, in such a suit, it be shown as charged that the tax deed was procured by an arrangement between the defendants to coerce the lessee to give up the property and put the holder of the deed into possession, the tax deed will not be allowed to stand in the way of equitable relief, while if it be shown that a *bona fide* title is claimed under the deed, the court can send issues to a court of law to determine the validity of the deed and retain the cause for further proceedings when the verdict upon the issues shall have been certified back to it.

6. Even if an objection that such a bill is multifarious can be considered on a motion for an injunction *pendente lite*, such an objection is untenable, in view of the charge in the bill that there was an arrangement between the parties by which the tax title should be procured for the purpose of ousting the complainant and putting the holder of the tax deed into possession.

No. 241.   Submitted December 10, 1902.   Decided January 20, 1903.

HEARING on an appeal by one of several defendants (who severed from his codefendants) from an interlocutory order of the Supreme Court of the District of Columbia granting an injunction *pendente lite* in a suit in equity to be relieved from an attempted forfeiture of a lease, to enjoin proceedings to recover possession of the leased property, etc.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an interlocutory order of the Supreme Court of the District of Columbia directing an injunction *pendente lite*.

The bill in the cause was filed by the appellee Caroline

King, the lessee and occupant of a certain piece of real estate in the city of Washington, against Marianne A. B. Kennedy, the lessor and owner of the property, and Meyer Cohen, Sigmund Kann and Louis Kann, who had become possessed of some interest or claim in it, to be relieved from an attempted forfeiture of her lease, to have a tax deed procured by Cohen for the benefit of the Kanns declared void, to restrain proceedings instituted by Mrs. Kennedy before a justice of the peace for the possession of the property, and to enjoin all the defendants from setting up any title or claim adverse to her lease. A restraining order was issued on December 4, 1901. On the same day the principal defendant, Marianne A. B. Kennedy, died, leaving a will whereby she constituted the appellant, Henry Randall Webb, as her executor, and directed the payment of some legacies, but made no other disposition of her estate, which is assumed to have descended to the appellee Maria G. Dewey. The will was probated and Webb entered upon his duties as executor. He renewed the proceedings for the dispossession of Mrs. King under the landlord and tenant act.

Thereupon, the appellee, Caroline King, filed a bill of revivor and supplemental bill, and brought in Henry Randall Webb and Maria G. Dewey as parties defendant, and procured a restraining order against the proceedings instituted by Mr. Webb. Thereafter the defendants all filed their several answers, and with the answers were filed numerous exhibits and two affidavits. There was then a hearing upon the motion of the complainant for an injunction *pendente lite,* which was allowed and issued upon the condition that the complainant should file a satisfactory bond. This was done. From the order allowing the injunction Henry Randall Webb, severing from his codefendants, has appealed. The other defendants have not appealed, and are only before the court as appellees, and not claiming at this time to be heard as to their respective interests.

As this cause must necessarily be remanded to the Supreme Court of the District for further proceedings therein, whatever may be our decision in regard to the questions involved

in the present appeal, since, as the appeal is merely from an interlocutory order, our present decision cannot dispose of the litigation; and as all the parties affected by the injunction have not appealed, and it would be manifestly improper for us to prejudge or to prejudice their interests or the interests of the complainant in the cause as against them; and as the proofs to be hereafter taken may materially alter the conditions, as they now appear, it does not seem to us to be proper at this time to enter into any extended consideration either of the law or of the facts of the case. Of the latter it seems to us to be sufficient to state the following, which are either conceded or not controverted.

On July 8, 1890, Mrs. Kennedy leased to Henry King, the now deceased husband of the appellee Caroline King, the premises in controversy, used for business purposes, for a term of three years. By two subsequent agreements the term was so extended as to expire in 1908. King died on August 15, 1897; his son Harry King became administrator of his estate, and on August 26, 1897, with the written consent of Mrs. Kennedy, sold and transferred the leasehold interest to Caroline King, the widow, who thereafter continued and yet continues to occupy the premises and carry on the same business therein.

The lease was made upon conditions that the rent should be promptly paid; that the property should be used merely as a fancy dry goods store, with such portion for residence as might be required, that the property should not be sublet without consent in writing; that it should be kept in repair; that in each and every year of the continuance of the lease the taxes should be paid; that upon the termination of the lease the property should be surrendered in reasonably good condition, and that the lessee should pay rent at the rate of $200 a month on the last day of each and every month. And it was stipulated that, upon the failure of the lessee to perform any of these conditions, the lease should be at an end and the lessor might re-enter upon the property.

All the conditions appear to have been duly performed by the lessee, except that, as she claims, through inadvertence

and oversight, and in consequence of her mental distress upon the death of her husband and the perplexed condition in which he had left his affairs, Mrs. King failed to pay the taxes for the second half of the fiscal year ending on June 30, 1898, although thereafter she paid all the subsequently accruing taxes down to the time of the filing of her bill. On April 13, 1899, there was a sale of the property by the tax collector of the District for the unpaid instalment, and it was purchased by a tax speculator from the State of New York for the sum of $143.83, apparently the amount of the unpaid tax, with interest and costs. The purchaser received the usual certificate of purchase; and after the lapse of two years, being the period allowed for redemption, he addressed a note to Mrs. King, in which he called her attention to the matter, and offered to let her redeem the tax certificate on the payment by her to him of $294.31. This sum was deemed too large by Mrs. King. Negotiations by correspondence followed. The holder of the certificate reduced his demand to $272.90; but Mrs. King delayed acceptance of it.

In the meantime she had been advised by some one that the tax sale was illegal and invalid, and Mrs. Kennedy and her counsel, who afterwards became her executor, the present appellant, Mr. Webb, became aware of the condition of things. About this time an arrangement was entered into between Mrs. Kennedy and the two Kanns, who held the adjacent and surrounding property for their business and who desired to take in also the premises occupied by Mrs. King, that they would lease these premises from Mrs. Kennedy at the increased rental of $300 a month, if she succeeded in regaining possession of them. There was some negotiation between Mr. Webb and the holder of the tax certificate, and there were personal interviews in regard to the matter between Mr. Webb and the appellee, Mr. Meyer Cohen, who was acting as attorney and counsel for the Kanns. Mr. Cohen speedily proceeded to the State of New York, purchased the tax certificate for $500, and procured the issue of a tax deed thereon to himself from the authorities of the District of

Columbia, which he now holds. Mrs. King in her bill of complaint alleges that he holds it for the benefit of the Kanns, and her statement in that regard does not seem to be seriously controverted. On October 4, 1901, Mrs. King's counsel called upon Mr. Cohen with an offer to purchase from him the tax title which he had procured and to repay to him all his costs and expense in the premises, but the offer was refused.

Mrs. Kennedy, by her counsel, then notified Mrs. King that she would enforce the forfeiture of the lease for her nonpayment of taxes, and immediately commenced proceedings to dispossess her. Thereupon Mrs. King filed the original bill in this cause, and subsequently her bill of revivor and supplemental bill, with the result that, notwithstanding that the answers denied some of the allegations of the bill, the court below, as we have already indicated, granted the injunction *pendente lite* which was prayed by the complainant.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. E. S. Theall,* for the appellant:

1. It has been explicitly decided that where due payment of taxes is one of the covenants of a lease, and the taxes are allowed to become delinquent by the lessee or his assigns, no demand for their payment by the lessor is necessary before declaring a forfeiture, and that equity will not relieve against the forfeiture of a lease for breach of covenant when the breach has been culpable, long persisted in and detrimental. *Bacon* v. *Park,* 19 Utah, 46; decided in the year 1899.

In the case of *Baldwin* v. *Reese et al.,* decided in the Superior Court of Cincinnati in the year 1880, the direct question here concerned was presented and similarly decided.

2. It is well settled that while upon a hearing for an interlocutory injunction the court will not inquire into matters set up by way of confession and avoidance, yet it will consider all matters averred in the answers to the bill which are responsive to the averments of the bill.

3. Under what circumstances will a court of equity relieve against a forfeiture ? The leading cases upon the subject are those of *Peachy* v. *The Duke of Somerset,* 1 Stra. 447, and *Sloman* v. *Walter,* 1 Bro. C. C. 418. These cases, as is well known, are those which were selected by White and Tudor for insertion in their " Leading Cases in Equity," Vol. III, p. 648, where they will be found with the commentaries of the English and also of the American editors, Hare and Wallace. Reference is made to the third American edition.

In England, the case of *Sanders* v. *Pope,* 12 Ves. Jr. 281, was the cause of some misunderstanding as to the principle of law here involved. This case was to the effect that relief against forfeiture where compensation can be made as against a clause of re-entry for breach of a covenant to lay out a specific sum in repairs in a given time is not limited to cases of accident, etc., but will be granted even against negligence and voluntary acts. In a note to this report, attention is called to the fact that the authority of this case has been very much shaken, if not entirely overruled, by the following cases: *Reynolds* v. *Pitt,* 19 Ves. Jr. 143; *White* v. *Warner,* 2 Meriv. 460; *Rolfe* v. *Harris,* 2 Price, 210, note; *Bracebridge* v. *Buckley,* 2 Price, 217.

For American authorities see Story's Eq. Jur., Secs. 1314, 1323; 1 Pomeroy's Eq. Jur., Secs. 453, 454; *Smith* v. *Mariner,* 68 Am. Dec. 73, and note beginning at page 85.

3. As to what sort of accident it is that a court of equity will relieve against see 1 Story's Eq. Jur., Secs. 78, 146; *Barrett* v. *The Passumpsit Turnpike Co.,* 15 Vt. 757.

On her own showing the plaintiff's omission to pay the tax in question was not an accident or mistake, but was purely negligent. She does not aver one fact to excuse her negligence. She does not say that she had ever gone to the tax office to pay the tax, and had received erroneous information about it, so that she made no payment. Nor does she aver any ground to rebut the imputation of negligence. Counsel are at a loss to infer, from the averments of her bills, any distinct fact whatever upon which either mistake or accident could be based. Her omission was due to inattention or to

forgetfulness. She had only to go a few hundred feet to the tax office, when inquiry or inspection of the tax books would have shown her that the tax in question was unpaid, and remained unpaid for more than two years.

But what is to be said of her conduct (supposing it to be relevant at all, and it certainly is relevant in connection with her own actions) in failing to at once redeem the tax sale from July to October, 1901 ? While the lessor's premises were in peril, she occupied more than two months in determining whether or not she should redeem by paying $100 bonus, or whether she could have that reduced to $50. So that upon her own showing her case comes under no known head of equitable relief; and upon demurrer the bill would be dismissed.

A case directly illustrative of the point here under discussion is that of *Mactier* v. *Osborne,* 146 Mass. 399. And see also *Noyes* v. *Anderson,* 124 N. Y. 175.

4. The bill in this case is multifarious. What is or is not multifarious is, it seems, a question to be determined in each particular case. Story's Eq. Pl., Sec. 271.

The case made against the lessor concerns only himself and the plaintiff. Whether or not the lessee has forfeited her lease is a question that in no wise concerns any other party to these proceedings.

The plaintiff's bill is multifarious, in that while it should be a bill against Webb only, and for the canceling of a forfeiture only, it is a bill for those purposes and also for the purpose of litigating the validity of a tax title as between the plaintiff and the holders of that title, which cannot be done.

5. These premises are stated in the plaintiff's bill to be worth $50,000. The penalty of the injunction bond is $40,000. The owner has had no opportunity to prove the value, but he puts it at $70,000. Is it possible that the court will leave the former tenant in possession and tie the owner's hands while the tenant endeavors at the owner's risk in some way undefined and indefinable to avoid an adverse tax deed become absolute by the tenant's default, and this in the face of the owner's ability to compromise the matter and

acquire the outstanding title by leasing the premises to the holder of the tax title.

*Mr. Leon Tobriner, Mr. J. J. Darlington, Mr. William G. Johnson,* and *Mr. Andrew Y. Bradley* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

On an appeal from an interlocutory order under the circumstances here stated, we prefer to indicate our conclusions rather than to enter into any extended reasoning on the questions presented for decision. These questions, as we understand them, are these: (1) That the complainant by her long delay in respect of the payment of the taxes and the redemption of the tax certificate has precluded herself from relief in equity; (2) That it is apparent from the answers that the complainant was guilty of other defaults; (3) That a forfeiture for the nonpayment of taxes is not one from which equity will relieve; (4) That the bill is multifarious in bringing in matters other than the controversy between the lessor and the lessee, and involving other rights than those in which the lessor is interested.

1. With reference to the first of these questions, notwithstanding that the complainant in the cause should have found it to be to her best interest not to higgle with the holder of the tax certificate for the comparatively small difference between them, we fail to find, as matter of law at this stage of the case, that there was any such delay or laches on her part as would preclude her from relief in equity. It is evident that her failure to pay the taxes in the first instance was due, as she states, to inadvertence, since she paid all the subsequently accruing taxes down to the time of the filing of her bill. And we cannot hold that her delay in redeeming the tax certificate was wholly unreasonable, in view of the fact that she had been advised that the sale for taxes was invalid.

2. It is argued, in the second place, that, although the complainant alleged in her bill of complaint that she had not

been otherwise delinquent, yet the answers denied this and alleged certain other failures by her. But plainly it does not follow from this that an injunction *pendente lite* should not issue. The argument for the appellant proceeds upon the theory that the motion for an injunction *pendente lite* should be determined as though the hearing were upon bill and answer. We think this is an erroneous assumption. It is right and proper, of course, as claimed by counsel, that, upon a motion for an injunction *pendente lite,* the statements of an answer responsive to a bill of complaint and contravening its allegations, should be considered and have due weight, if such answer has then been filed; and yet it does not follow that, at the hearing of such motion, the answer, which at this stage of the case cannot be regarded as much more than an affidavit, should be allowed to overcome the sworn statements of the bill of complaint. The application is one addressed to the discretion of the court; and the purpose then is not so much to determine rights as to preserve the existing status until the rights of the parties can definitely be determined, if there is reason to believe that a change of such status would injuriously affect the rights of the complainant. In the effect to be given to an answer at this point, it must be remembered that the complainant has had no opportunity to controvert its averments; and that, if in the hearing of a motion for an injunction *pendente lite* the averments of an answer in denial of the allegations of a bill of complaint are to be taken as true and incontrovertible, there probably never would be or could be a case where an injunction *pendente lite* could properly be issued. Upon this hearing the sworn statements of the answer are entitled to no greater weight than the sworn statements of the bill of complaint; and it is within the sound discretion of the court to grant or withhold the injunction.

3. The burden of the very forcible argument on behalf of the appellant is that a forfeiture for default in the payment of taxes, required under a lease to be paid by the lessee, is not one from which the latter can be relieved by a court of equity. But we fail to be persuaded by the force of this

argument. Without entering into a specific consideration of the reasons advanced by counsel or of the authorities cited in support of them, we are of opinion, whatever may have been the rule under different conditions, where perhaps tax laws were different, that where the payment of taxes enters, as it does in the case before us, into the rental consideration of the lease, equity will relieve from forfeiture for the nonpayment of taxes equally with forfeiture for the nonpayment of rent as such. We find no difference whatever in principle under our laws between a provision in a lease that would require the lessee to pay to the lessor for the use of the property a lump sum that would include the taxes, and a provision that would require the payment of an equivalent sum, but part of it for rent as such and part for taxes. If the precise amount of taxes payable on property could be ascertained in advance for each and all the years of the term of a lease, we presume there would rarely or never be any provision in a lease for their payment by a lessee. The lessor would prefer to pay them himself, and to add them to the amount of the ordinary rent. It is the uncertainty as to their amount in successive years that is the principal, if not the only reason for these specific covenants for their payment by the lessee, to whom the risk of the uncertainty is thereby transferred. But, whatever be the reason for the insertion of the covenant in leases intended to run for a number of years, it is very plain that in most, if not all, of such leases the payment of taxes by the lessee is part of the rental consideration; and there is no good reason why a forfeiture for the nonpayment of this part of the consideration should not be relieved against in equity as much as a forfeiture for nonpayment of the part specifically called rent, in regard to which there is no question as to the power of a court of equity to relieve in proper cases.

It is urged, however, that the danger of the loss of the title by the lessor as a consequence of the failure of the lessee to pay the taxes which he has covenanted to pay, should take this covenant or agreement out of the category of those with reference to which a court of equity will give relief.

But we find nothing in our law that would warrant this distinction. The statute law of the District of Columbia allows ample time for the payment of overdue taxes, with only a reasonable penalty attached; and it allows two years for the redemption of property from sales made for nonpayment. During all this time it behooves lessors as well as lessees to be vigilant. A lessor does not escape the duty of vigilance, which is no very difficult duty, to see that the taxes on his property are paid, when by agreement he has shifted the burden of payment from himself to the lessee, as between themselves. It is not more difficult for him to make inquiry in this regard for the purpose of preventing a forfeiture than it is to make similar inquiry for the purpose of enforcing a forfeiture. With proper vigilance the only risk to be incurred is at the utmost only the addition of a pecuniary penalty to the amount of the tax.

It is true that in this case a tax deed has actually been issued, and the ultimate mischief has apparently been done. But the position of the appellant in regard to this does not seem to be entirely consistent. Either this tax deed is valid or it is invalid. If it is valid, then the appellant's title to the property is gone, and he has no right to re-enter and dispossess the lessee. If it is not valid, it should interpose no objection to a redemption of the property either by the lessor or the lessee; and the situation is in law as if no tax deed had actually been issued. But the circumstances under which this tax deed was procured are manifestly such as should be investigated by a court of equity. If it was procured, as alleged in the bill of complaint, for the purpose of coercing the lessee to give up the property or to afford the opportunity of ousting her from it, so that the other parties who are desirous to lease it should be able to consummate their arrangement with the owner for a new lease of the property to themselves, then beyond question a court of equity can grant relief against all the parties, and the tax deed cannot be permitted to stand in the way of such equitable relief. If in the course of the investigation it is found that a *bona fide* title is claimed under this tax deed, there

is no reason why, if need be, a court of equity could not cause issues to be sent to a court of common law to determine its validity, and retain the cause for further proceedings, when the verdict upon the issues shall have been certified back to it.

4. We do not think that the objection of multifariousness of the bill of complaint, if it be proper for us at this time to consider that question, is tenable under the circumstances stated in the bill. What we have said in regard to the propriety of an investigation of the circumstances under which the tax deed was procured, will apply to this question of multifariousness. If the complainant in the cause, apart from the matter of the tax deed, has the right to be relieved from the forfeiture, as we hold that she has, if her testimony sustains the allegations of her bill; and if, as alleged in the bill, there was an arrangement between the parties other than the complainant, whether entered into in good faith or otherwise, that this tax title should be acquired and it was in fact acquired to further the purpose of ousting the complainant and putting the Kanns in possession of the property as lessees, it is eminently right and proper to join in the suit all the parties to such arrangement, for the arrangement is now the main obstacle interposed by the parties to the relief to which the complainant would otherwise be entitled.

We see no reason to disturb the action of the court below in the premises. In view of all the circumstances of the case, so far as they have been developed, we think that the discretion of the court was properly and wisely exercised in granting the injunction *pendente lite.*

The order appealed from will therefore be affirmed, with costs; and the cause will be remanded to the Supreme Court of the District of Columbia for further proceedings therein according to law. And it is so ordered.          *Affirmed.*